## OLIVIER vs. TOWNES.

East'n District.
*Jan.* 1824.

OLIVIER
*vs.*
TOWNES

APPEAL from the court of the first district.

PORTER, J. delivered the opinion of the court. This action was commenced by attachment. The petitioner after setting forth the manner in which the defendant was indebted to the plaintiff, states that the half of a certain vessel called the Averick, lately in the port of New Orleans, belonged to John D. Townes, the defendant, that being about to depart from that port on a voyage for Liverpool, she was insured at the office of the Louisiana State Insurance Company, and at the instance, and by the request of Gordon, Grant & co. and, that being since lost, one half of the amount so insured was due to Townes. It concludes by a prayer that the attachment be levied on this debt, and that the insurance company, and Gordon, Grant & co. be made garnishees, and directed to answer interrogatories propounded to them and annexed to the petition.

The attachment was levied as prayed for, and the answer of the garnishees amount to this. That an insurance had been affected on the vessel, for the sum of 6000 dolls. That she had got aground at the Balize, that she had

A creditor may here attach the property of his debtor before it is transferred by sale and *delivery.*

And that, although a different rule should prevail in the country of the domicil. of the debtor.

been abandoned by the insured, that the abandonment had not been accepted, and the Louisiana Insurance Company state that they have received a letter from Wm. Nott & co. stating that the interest of John D. Townes, in the said vessel, had been conveyed to R. C. Ward & co. and warning them not to pay the amount due on said interest, except to persons authorized by them.

The interpleaders in this action are R. C. Ward & co. mentioned in this letter. In their bill of intervention, they state that on the 21st June, in the year 1823, an agreement was entered into, at Boston, by which the defendant in this action, agreed to sell to them the one undivided half of the ship Averick, of which Townes and Webb were then owners, and that afterwards at Petersburg, Virginia, the defendant did, on the 24th July of the same year, actually sell to the petitioners, the one half of the vessel now attached. By reason of which they state that that they are entitled to demand and receive the amount due by the Louisiana Insurance Company, in consequence of the policy signed by them, and they pray judgement accordingly.

On the evidence taken in the cause, the

court below gave judgement for the claimants Ward & co. and the petitioner appealed.

East'n District.
Jan. 1824.

OLIVIER
vs.
TOWNES

By the statement of facts agreed on between the parties, it appears that the ship Averick arrived at New Orleans on the 22d of July, 1823; that on the 25th of that month, Nott & co. informed the master of the transfer to Ward & co. and that on the 2d of September, the letter was delivered by their agent to William Williams, master and part owner of the ship, stating that they had agreed to take from Townes his interest in the vessel, in payment of all demands against him, that they had just received a bill of sale from him, which contrary to their agreement contained a clause that she was to be delivered on her return from Liverpool. That in consequence he had requested Wm. Nott & co. to demand of him one half of the ship, and recommended him to hold in his hands the amount of the charter, until it was determined whether they or Mr. Townes were entitled to it.

Townes's letter to the captain, which also makes a part of the statement, informs him that he has sold the ship, deliverable at Liverpool, and contains directions that when she is paid off and discharged, he will deliver her to the present claimants.

OLIVIER
vs.
TOWNES

As the interpleaders in this case claim, under a bill of sale from Townes, they must take it with all its stipulations—its burthens, as well as its benefits. Hence, as the instrument produced by them contains a clause that the ship was to be delivered in Liverpool. no act of the vendees could make any possession taken by them elsewhere, a legal delivery under the sale, unless indeed the vendor subsequently consented to alter this part of the contract.—But so far from that consent being shewn, we have express evi ence to the contrary contained in his letter of the 24th July, and addressed to the captain in this port.

On the facts, therefore, we have presented the case of a creditor attaching property of his debtor, before it was transfered by sale and delivery, and it has been so repeatedly decided in this court that this may be done, and that nothing short of actual delivery will defeat this right, that it would be sufficient to refer to this jurisprudence as settling the right of the parties now before us, were it not for the great pains taken by the counsel to shew that this doctrine is incorrect, if extended to cases when the vendor and vendee both live in a country where a different rule on the subject of the sale of moveable property prevails.

East'n District.
*Jan.* 1824.

OLIVIER
*vs.*
TOWNES

This point is not new, it was taken in the case of *Thuret & al. vs. Jenkins,* 7 *Martin,* 318 and after a very close attention to the arguments now urged by the counsel, and the authorities relied on we are obliged to confess that we prefer the reasoning and the law which the counsel for the appellee favoured us with in the case just cited, when his professional duty required him to support the opposite doctrine from that for which he now contends.

The position assumed in the present case is that by the laws of all civilized countries, the alienation of moveable property, must be determined according to the laws, rules and regulations in force where the owner's domicil is situated: hence it is insisted that, as by the law exciting in the state where the vendor lived, no delivery was necessary to complete the sale, it must be considered as complete here, and that it is a violation of the principle just refered to, to apply to the contract, rules which are peculiar to our jurisprudence, and different from those contemplated by the parties to the contract.

We readily yield an assent to the general doctrine for which the appellee contends. He has supported it by a variety of authorities

drawn from different systems of jurisprudence.
But some of those very books furnish also the
exception on which we think this case must
be decided, namely, that "when those laws
clash with and interfere with the rights of the
citizen of the countries where the parties to the
contract, seek to inforce it, as one or other of
them must give way those prevailing where
the relief is sought, must have the preference."
Such is the language of the English book to
which we have been refered, and Huberus,
whose authority is more frequently reserted
to on this subject than any other writer, be-
cause he has treated it more extensively and
with greater ability, tells us in his treatise *de
conflictu legum*, "*effectu contractuum certo loco
initorum, pro jure loci illius alibi quoque obser
vantur si nullum inde civibus alienis creetur
prejudicium, en jure sibi quæsito;*" "The effects
of a contract entered into at any place will be
allowed according to the law of that place, in
other countries, if no inconvenience results
therefrom, to the citizens of that other country
with respect to the law which they demand."
This distinction appears to us founded on the
soundest reasons·  The municipal laws of a
country have no force beyond its teritorial lim-

its, and when an other government permits these to be carried into offect within her jurisdiction, she does so upon a principle of comity. In doing so care must be taken that no injury is inflicted on her own citizens, otherwise justice would be sacrificed to courtesy, nor can the foreigner or stranger complain of this, if he sends his property within a jurisdiction different from that where he resides, ne impliedly submits it to the rules and regulations in force in the country where he places it. *What the law protects, it has a right to regulate* A strong evidence of this is furnished by the doctrine in regard to successions. The general principle is, that the personal property must be distributed according to the law of the state where the testator dies, but so far as it concerns creditors it is governed by the law of the country where the property is situated. If an Englishman or a Frenchman die abroad and leaves effects here, we regulate the order in which his debts are paid, by our jurisprudence, not that of his domicil.

Upon the principle that all contracts in regard to personal property must be regulated by the *lex loci* where the owner resides, a very important question has been agitated in several of

CASES IN THE SUPREME COURT

OLIVIER
vs.
TOWNES

our sister states, and in the supreme court of the Union; whether a legal assignment under the bankrupt acts, vests the moveable effects situate in an other country in the assignees, so as to defeat an attachment laid by a particular creditor; as the decisions which have been given on these cases are founded on the doctrine of international law they are entitled to great respect, and the questions involved in them have a direct bearing on the case now before us. In Pennsylvania, Maryland, and in the Supreme Court of the United States, it h s been decided that such an assignment does not vest the property in the assignees. The chancellor of New York in a very elaborate opinion, lately delivered, lays down a different rule. But it may be remarked, that he proceeds on the idea, that it is no injury to the citizens of New York that such a rule should prevail; that the great principle of bankrupt laws is, justice founded on equality, &c; that it is the interest of all nations to recognize and inforce them.— It is not necessary for us to say whether in the case put, this view be correct, or not. Certain we are that the great doctrine must be received with the limitation already noticed. We have been unable to find any thing deserving

the name of authority, that does not recognize it, Chief Justice Parson, in delivering the opinion of the Supreme Court of Massachusetts says, "to give effect to contracts made in an other state is an act of comity due from the courts of the state in which such contract may be sued, to the state in which they may be made," but the rule he adds is subject to two important exceptions, the first of which is, that neither the state, nor its citizens suffer any inconvenience by giving the contract effect.— *Huberus de conflictu legum, Lib.* 1, *Tit.* 3, *no.* 11 *Merlin, quertions de droit, vol.* 2, *p.* 451, 1 *Gallison,* 375, 5 *East.* 131, 6 *Binney,* 353, 5 *Cranch,* 299, 2 *Massachusetts,* 84, 6 *ibid,* 358' 2 *H. Blackstone,* 405, 7 *Martin,* 318, 3 *ibid,* 222, 4 *ibid,* 25, 5 *ibid,* 23, 7 *ibid,* 24, 9 *ibid,* 296, 403, 4 *Johnson, Chancery cases,* 460.

We proceed to examine whether giving effect to the law of Virginia, on the contract now set up, would be working an injury to this state, or its citizens. In doing this we must look to the general doctrine, and the effect it would have on our ordinary transactions, as well as its operation in this particular case. If we held here that this sale can defeat the attachment, we should, on the same principle,

OLIVIER
vs.
TOWNES

be obliged to decide that the claimant would
hold the object sold in preference to a second
purchaser to whom it was delivered. The
rule being, that when the debtor can sell and
give to the buyer a good title, the creditor can
seize, or in other words where the first sale is
not complete as to third persons, the creditor
may attach and acquire a lien, *M'Neill vs.
Glass, Martin's Reports, New Series, vol.* 1,
261. In relation to moveable property, our
law has provided that delivery is essential to
complete the contract of sale as to third parties.
This valuable provision by which all our
citizens are bound in their dealings, protects
them from the frauds to which they would be
daily subject, were they liable to be affected
by previous contracts not followed by the giv-
ing of possession. The exemption contended
for here, in behalf of the residents of an other
state, would deprive them of that protection
wherever their rights, as purchasers, came in
contact with strangers, a protection which it
may be remarked, it is of the utmost impor-
tance, owing to our peculiar position, we should
carefully maintain. This city is becoming a
vast store house for merchandize sent from
abroad, owned by non-residents, and deposit-

East'nDistrict.
*Jan.* 1824.

OLIVIER
*vs.*
TOWNES

ed here for sale, and our most important commercial transactions are in relation to property so situated. If the purchasers of it should be affected by all the previous contracts made at the owners domicil, although unaccompanied by delivery, it is easy to see to what impositions such a doctrine would lead, to what inconvenience it would expose us, and how severely it would check and embarrass our dealing.—However anxious we may be to extend courtesy, and afford protection to the people of other countries who come themselves, or send their property within our jurisdiction, we cannot indulge our feelings so far as to give a decision that would let in such consequences as we have just spoken of. It would be giving to the foreign purchaser an advantage which the resident has not, and that, frequently, at the expence of the latter. This, in the language of the law, we think would be a *great inconvenience* to the citizens of this state, and therefore we cannot sanction it.

On looking into the record, for the purpose of giving final judgement, we observe that the proceedings has been carried on below without an attorney being appointed to represent the absent debtor. The case must therefore

East'n District.  be remanded for trial between the petitioner
*Jan.* 1824.       and defendant.

OLIVIER
*vs.*                    It is therefore ordered, adjudged, and de-
TOWNES
creed, that the judgment of the parish court be
annulled, avoided, and reversed, and that the
claim of the intervening creditor be overuled,
and that the case be remanded for a new trial
between the petitioner and defendant, the ap-
pellee paying costs of this appeal.

*Grymes* for the plaintiff, *Livermore* for the
defendant.